**In re The Interest of S.I.G. (dob: 8-20-87), J.I.G. (dob: 12-27-90), Children under seventeen years of age.**

No. 23348.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 15, 2000.

Jacqueline Gordon, Isabella, pro se.

Bill Prince, Springfield, for respondent.

Before BARNEY, C.J., PREWITT, J. and GARRISON, J.

PER CURIAM.

On July 27, 1998, a Greene County Deputy Juvenile Officer filed a petition in the Circuit Court of Greene County, Juvenile Division ("juvenile court"), asking the juvenile court to exercise jurisdiction over S.I.G. and J.I.G.,[1] female children under seventeen years of age, because they were "in need of care and treatment" in that

---

1. As best this Court can tell from the record, J.I.G. is also known as J.I.R.

they were "without adequate and proper care, custody, support, supervision and parenting," and their welfare was in danger. The grandmother of the children, Appellant J.G. ("Grandmother"), had been caring for the children and moved to intervene in the case. Her motion was granted. The Juvenile Office, after gathering more evidence, moved to dismiss its petition. The juvenile court sustained the motion to dismiss and Grandmother appeals pro se. Because of the gross inadequacy of her brief on appeal, we dismiss.

### Facts.

According to the record, in early July 1998, Grandmother called the police to report that three of her grandchildren—the two children involved in the case at hand as well as another child, K.G., who was evidently S.I.G.'s and J.I.G.'s cousin—had been sexually assaulted. Karla Smith, a social service worker with the Ozark County Division of Family Services ("DFS"), was contacted by the police and met with the children and Grandmother at Grandmother's home on July 6, 1998. The children claimed that over several weeks in August of 1997, while Grandmother was in California, J.D.P., mother of S.I.G. and J.I.G., ("Mother"), and Mother's husband, J.P. ("J.P."), had committed various unlawful acts. The children told Smith that Mother and J.P. had stolen various items from Grandmother and that Mother and approximately ten "motorcycle people," who wore leather jackets and red baseball caps, had sexually assaulted them in various ways. The children also related many other atrocities, including murder; forced use of narcotics; and sexual assault with spoons, forks, nails, straws, and "fence tools."

"SAFE" exams on the children completed on July 10, 1998, related that "no physical findings were present," despite the children's claims to have been injured badly enough to bleed during the sexual as-

saults on a number of occasions. The children also stated that Mother had hit them a number of times but that Mother had "a white cream that [she] would put on their bruises and when it was on for some time she would wipe it off and the bruise would be gone." [2]

The record also reveals that Mother and J.P. contacted Smith and claimed Grandmother "was crazy and that she had programmed the children to make all the allegations." Mother stated "that she wanted to see her children and [Grandmother] was trying to take them away from her forever." Grandmother's ex-husband was interviewed and related he thought Grandmother "very capable of programming the children in a short period of time"; that he had been in Mother's home from December 1997 through January 1998 and had seen nothing but love between Mother and the children; and that prior to the allegations Mother had been trying to get the children back from Grandmother and had finally decided "she was going to go through the courts to regain custody." Grandmother's ex-husband further stated that he felt that Mother's threat to go to court to get her children back from Grandmother "was why all the allegations surfaced when they did."

The children were taken into protective custody on July 17, 1998. The deputy juvenile officer filed her petition on July 27, 1998. The court exercised its jurisdiction over the minors; ordered temporary legal custody placed with the DFS; and, following two continuances, set a jurisdictional and dispositional hearing on the petition to be heard on April 5, 1999. But on March 25, 1999, the juvenile office through its attorney moved to dismiss its petition, noting that "the Juvenile Office, the Division of Family Services and the Guardian Ad Litem, all believe that dismissing said Petition would be in the best interest of the minor children." At the March 31, 1999, hearing on the motion to dismiss, the

---

**2.** According to Grandmother's appellate brief, the children eventually confessed that they had made up the story about the murders and about being sexually assaulted.

representative of the DFS and the guardian ad litem for the two minors both stated that they had no objection to the motion to dismiss. Additionally, the representative of the DFS also related that "DFS has no concerns about the children going to their mother." The juvenile court then stated "I've not heard anybody bring to me information at this point that would cause me to believe that the juvenile office has improperly made that assessment [dismissing the petition] or that the Court should keep this petition pending." The juvenile court also denied Grandmother's petition for a child protection order. Accordingly, the juvenile court filed its written judgment and order of dismissal on October 20, 1999. It is from this judgment and order of dismissal that Grandmother seeks to appeal.

 Grandmother attempts to raise five points on appeal. The Greene County Juvenile Office, respondent in this case, has filed a motion to dismiss the appeal contending, *inter alia*, that Grandmother's brief fails to comply with Rule 84.04 applicable to appellate review.[3] "We note that our supreme court has not promulgated special rules for writing appellate briefs in juvenile cases. However, Rule 110.04 provides that the Rules of Civil Procedure (41–101) apply when no procedure is provided in Rules 110 through 128." *In Interest of A.H.*, 963 S.W.2d 374, 379 (Mo. App.1998). "Consequently, [Grandmother's] brief must comply with Rule 84.04 to preserve anything for our review." *Id.* Nevertheless, Grandmother's brief fails to follow many of the rules applicable to appellate briefs. Grandmother is appealing pro se, but "[p]*ro se* parties are bound by the same rules of procedure as parties represented by lawyers, and are not entitled to indulgences they would not have received if represented by counsel." *Murphy v. Shur*, 6 S.W.3d 207, 208 (Mo.App. 1999); *see also Maroney v. Maroney*, 953 S.W.2d 644, 645 (Mo.App.1997). This Court must hold pro se parties to the same standards as parties represented by lawyers in order to ensure fairness and impartiality:

> While this court recognizes the problems faced by pro se litigants, we cannot relax our standards for non lawyers. *Brown v. City of St. Louis*, 842 S.W.2d 163, 165 (Mo.App. E.D.1992). It is not for lack of sympathy but rather it is necessitated by the requirement of judicial impartiality, judicial economy and fairness to all parties.

*Murphy*, 6 S.W.3d at 208 (quoting *Kline v. Casey's Gen. Stores*, 998 S.W.2d 140, 141 (Mo.App.1999)).

Grandmother's brief disregards the mandatory requirements of Rule 84.04. Rule 84.04(c) requires the appellant to provide this Court with a fair and concise statement of facts that is relevant to the questions presented for determination and free of argument. " 'The primary purpose of the statement of facts is to afford an immediate, accurate, complete and unbiased understanding of the facts of the case....' " *Murphy*, 6 S.W.3d at 209 (quoting *Simmons v. Lawrence County Jail*, 948 S.W.2d 242, 243 (Mo.App.1997)). Under Rule 84.04(i), "[a]ll statements of fact and argument shall have specific page references to the legal file or the transcript." Grandmother's statement of facts is rife with argument and largely unsupported by page references.

More importantly, Grandmother's "points" on appeal are also flawed. Grandmother's five "Questions On Appeal" are listed in the following numbered paragraphs.

1. Did the misuse of RSMo 210.125.2 deprive the trial court of jurisdiction which would make any subsequent trial court orders involving the minor children in question null and void?

2. Did the Respondents abuse prosecutorial discretion and/or commit prosecutorial misconduct, and/or the trial court commit judicial error, when they dismissed this case and turned custody of

---

**3.** All rule references are to Missouri Court Rules (2000).

the minor children in question over to [Mother], when no investigation of [Mother] was undertaken, though she had been accused of theft, child abuse, etc. in the State's petition?

3. Did the Respondents and trial court violate the Appellant's Right to Equal Protection and Due Process, as secured by the 14th Amendment to the Constitution of the United States, when they treated two people, charged with the same acts and in the same petition, differently as regards the investigation, handling and disposition of this case?

4. Did the State (including the trial court, Juvenile Office and DFS) violate the intent of the totalities of RSMo Chapters 210 and 211, providing for State oversight of the best interests of minor children, through its actions in this matter?

5. Did the actions (or inactions) of the court-appointed guardian ad litem, Kim Lowry, deprive the minor children in question of legal representation and protection?

Grandmother's "points" violate Rule 84.04(d)(1). Rule 84.04(d)(1) provides:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*],

in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Instead of following the form specified by Rule 84.04(d)(1), Grandmother's points are "merely questions that [Grandmother] would have us undertake to answer, sans guidance or direction." *Murphy*, 6 S.W.3d at 209. "[A]llegations of error ... not properly briefed shall not be considered in any civil appeal...." Rule 84.13(a).

Deficient points relied on force the appellate court to search the argument portion of the brief or the record itself to determine and clarify the appellant's assertions, thereby wasting judicial resources, and, worse yet, creating the danger that the appellate court will interpret the appellant's contention differently than the appellant intended or his opponent understood.

*Murphy*, 6 S.W.3d at 209; *see also In Interest of W.S.*, 599 S.W.2d 266, 267–68 (Mo.App.1980).

Finally, Grandmother has only one argument section for all five of her "points" and she fails to restate each of her "points" "at the beginning of the section of the argument discussing that point" as required by 84.04(e).

"[Grandmother's] brief does not comply with Rule 84.04. The requirements of the rule are mandatory.... The brief presents nothing for appellate review." *Maroney*, 953 S.W.2d at 646 (citation omitted).[4]

Respondent Greene County Juvenile Office's motion to dismiss the appeal is sustained and Grandmother's appeal is dismissed.

---

4. We need not and do not reach the question of whether a party may appeal the dismissal of a petition filed by a juvenile officer, pursuant to section 211.031, RSMo Cum.Supp. 1999. *See generally* § 211.091.4, RSMo Cum.Supp.1999; § 211.261.1, RSMo 1994; Rule 119.04.