**STATE of Missouri, Plaintiff–Respondent,**

v.

**William W. DOUGLAS, Jr., Defendant–Appellant.**

No. 25376.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 19, 2004.

Rehearing Denied March 12, 2004.

William W. Douglas, Richland, pro se.

Devin Ledom, Asst. Prosecuting Atty., Camdenton, for Respondent.

JEFFREY W. BATES, Judge.

William Douglas, Jr., ("Defendant") was charged by amended information with

three misdemeanor offenses: (1) violating § 252.040 by pursuing a wild turkey from a motor vehicle; (2) violating § 252.040 by shooting at a wild turkey during the closed season; and (3) violating § 571.030(7) by discharging a firearm on, along or across a public highway.[1] A mistrial was declared in Defendant's first trial because the jury was unable to reach a verdict. At the second trial, the jury found Defendant guilty of each offense. The trial court sentenced Defendant to 30 days in jail and imposed fines totaling $400.00.

Defendant has appealed from the judgment and presents three points of error for decision. He contends that the trial court erred in the following respects: (1) sustaining the State's objection to Defendant's efforts to impeach the State's witnesses with their prior testimony; (2) denying Defendant's motion to strike venireperson David Boeckman for cause; and (3) allowing the State to introduce the statements of Joyce Richardson in evidence without disclosing her prior criminal conviction to Defendant in response to his pretrial discovery request. We affirm the trial court's judgment.

Defendant does not challenge the sufficiency of the evidence to support his conviction. We consider the facts and all reasonable inferences derived therefrom in a light most favorable to the verdict, and we reject all contrary evidence and inferences. *State v. Harp*, 101 S.W.3d 367, 370 (Mo.App.2003). Viewed from that perspective, the evidence reveals the following facts.

On April 13, 2001, Conservation Agent Jack Cramer ("Agent Cramer") received a telephone call from Joyce Richardson ("Richardson"). Richardson reported that she lived on Seven Springs Road, which is near Stoutland, Missouri. At around 7:20 a.m., she heard a shot near her home. When she went to investigate, she observed a truck stopped on the road a few hundred yards from her house. As the truck drove past Richardson's house, she got into her car and followed it. The truck pulled over and stopped on the side of the road. Richardson stopped her car behind the truck. She wrote down the description and license number of the vehicle. It was a green Chevrolet truck bearing the Missouri license plate number 698KFO. Richardson got out of her car and approached the truck. She recognized the driver of the vehicle as Defendant. Defendant's son was in the truck with him. Defendant told Richardson they had shot at a coyote.

After receiving that report, Agent Cramer checked the identity of the owner of Missouri plate number 698KFO. It was registered to William W. Douglas on Belshe Road in Richland, Missouri. That is Defendant's name and address. At around 4:00 p.m. that afternoon, Agent Cramer met Richardson at the location where the shot was fired to look for evidence. Agent Cramer then drove to Defendant's home in Richland and arrived there about 5:30 p.m. He did not find anyone at home or see any vehicles parked there. He drove around the area and then met with a local police officer to verify that he had gone to the correct address. Agent Cramer left his business card with the police officer. Between 5:30 p.m. and 6:30 p.m., Agent Cramer returned to Defendant's house three different times, but no one was home. Agent Cramer then left the area and returned to his own home, arriving there about 7:30 p.m. Later that evening, Defendant called Agent Cramer at home. Defendant admitted that he and his son had been driving in Defendant's truck on the road near Richardson's house. Defendant's 15-year-old son had gotten

---

1. All references to statutes are to RSMo 2000 unless otherwise specified.

out of Defendant's truck, entered a field and shot at a coyote with a .30–06 rifle. Agent Cramer informed Defendant that coyote season was closed from April 1, 2001, through the end of turkey season that year. Because a juvenile was involved, Agent Cramer decided not to issue a citation for that violation.

On the same day that the coyote-shooting incident occurred (April 13, 2001), Donna Willcockson ("Willcockson") traveled from her home in Lebanon, Missouri, to Montreal, Missouri, to go mushroom hunting with her brother, Brian Foley; her sister, Melissa Wells ("Wells"); and Wells' three-year-old twin sons. Wells drove the group to Montreal in her automobile. After gathering mushrooms for several hours, they headed back to Willcockson's home in Lebanon. Wells was driving, and Willcockson was sitting in the front passenger seat. Foley and the twins were in the back seat.

During the return trip, Wells was driving south on State Route T and came up behind a dark-colored Chevrolet pickup truck ("the Chevrolet") that was stopped in the road in Wells' lane of travel. Wells pulled up behind the Chevrolet and stopped about 15–20 feet behind it. There were two people in the Chevrolet. One was sitting in the driver's seat, and the other was sitting in the middle of the seat next to the driver. Both persons were looking out the driver's side window of the Chevrolet into a field that adjoined the northbound lane of Route T. Wells and Willcockson were not able to identify or describe either of the persons sitting in the Chevrolet. As Wells and Willcockson were sitting behind the Chevrolet, they observed the person in the driver's seat of that vehicle point the barrel of a gun out the driver's side window and fire two shots at a wild turkey that was in the field across from where the Chevrolet was stopped. Each shot traveled across the northbound lane of Route T. When the first shot was fired, Willcockson looked at her watch and noted that it was 5:40 p.m. She then wrote down the time, a description of the truck and its Missouri license plate number, 698KFO, on a piece of paper. After the second shot was fired, the Chevrolet drove off at high rate of speed. When Willcockson arrived home in Lebanon, she called the Department of Conservation hotline and reported what she had observed.[2]

Willcockson's telephone report was originally sent to Pulaski County Conservation Agent Aaron Pondrom. The report stated that two persons in a dark-colored Chevrolet pickup bearing Missouri plate 698KFO were seen shooting a turkey in closed season from T Highway near Stoutland. Pondrom passed this information along to Camden County Conservation Agent Randy Doman ("Agent Doman").

On May 5, 2001, Agent Doman went to Defendant's home in Richland, Missouri, to question him. When Agent Doman arrived, he observed a dark-colored Chevrolet pickup truck in the driveway. The truck had a Missouri license plate bearing the number 698KFO. Agent Doman questioned Defendant about both the coyote-shooting and the turkey-shooting incidents that occurred on April 13, 2001. Defendant denied that he had been involved in the turkey-shooting incident. During the interview, however, Defendant did ac-

2. Operation Game Thief (OGT) is an anti-poaching program that was initiated by members of the Conservation Federation of Missouri. In cooperation with the Missouri Department of Conservation, OGT maintains a state-wide, toll-free hotline for reporting game or fish violations. Reward incentives are available to callers who report violations to OGT.

knowledge that the truck outside his house belonged to him. Defendant also admitted that he and his son had been driving around in the truck all day on April 13, 2001, but Defendant said he had returned home by 4:00 p.m. that day. Defendant did not respond when Agent Doman asked Defendant to explain where he was at 5:40 p.m. At the conclusion of the interview, Agent Doman issued Defendant three tickets charging him with the misdemeanor offenses noted above.[3] The three charges were consolidated for trial.

At trial, the prosecutor introduced the foregoing evidence, which tended to prove that Defendant was the person who fired the shots at the wild turkey from the Chevrolet while it was stopped on T Highway. Defendant, on the other hand, denied that he was the person involved in the turkey-shooting incident and presented both testimonial and documentary evidence in an effort to establish that he was spreading fertilizer at another location when the fateful shots were fired. After hearing all of this evidence, the jury found Defendant guilty on all three charges, and this appeal followed. Additional facts necessary to the disposition of the case are provided below as we discuss Defendant's arguments on appeal.

■ Both at trial and on appeal, Defendant has chosen to proceed *pro se* and conduct his own defense. We fully acknowledge his right to do so, but we must hold him to the same standards of practice and procedure that we would expect of an attorney in order to ensure fairness and impartiality. *See State v. Watkins,* 102 S.W.3d 570, 571 (Mo.App.2003); *In re S.I.G.,* 26 S.W.3d 616, 618 (Mo.App.2000). While Defendant's points relied on and brief are not in full compliance with the rules of appellate procedure, they are not so defective as to impede our review. The State of Missouri certainly has suffered no prejudice by reason of the manner in which Defendant's points are presented since it declined to file a brief or participate in oral argument. Therefore, we have exercised our discretion to review Defendant's points on the merits, rather than dismiss the appeal on procedural grounds.

■ In Defendant's first point relied on, he contends that the trial court erred in sustaining the State's objection to Defendant's efforts to impeach Wells and Agent Cramer with their prior testimony. This contention of error arose in the following fashion. Both Wells and Agent Cramer testified at Defendant's first trial, which resulted in a mistrial. In compliance with § 543.335, a record of this trial was kept using sound recording devices. Thus, the testimony that Wells and Agent Cramer gave at the first trial was preserved in question and answer format on audiotape. After the first trial ended in a mistrial, Defendant could have had this testimony transcribed so it would be available to use for impeachment purposes during the second trial.[4] He did not do so. Instead, he

---

**3.** Department of Conservation regulations issued on March 1, 2001, established permissible hunting methods and seasons for hunting wild turkeys. Pursuing, taking or attempting to take a wild turkey from a motor vehicle was prohibited by 3 C.S.R. 10–7.410. For the year 2001, 3 C.S.R. 10–7.455 specified that wild turkey season did not open until April 23rd. The first two tickets were issued for violating these regulations. The third ticket was issued for violating § 571.030(7), which prohibits a person from knowingly discharging a firearm "on, along or across a public highway."

**4.** We know the testimony given by Wells and Agent Cramer at the first trial could have been transcribed because the complete transcript of that proceeding was included as a part of the record on appeal that Defendant filed with this Court.

sought to impeach Wells and Agent Cramer based on his recollection of their prior testimony. Defendant sought to impeach Wells by asking this question:

Q: Do you recall last time when I asked you how far you were from the vehicle when you observed the vehicle, the license plate number, whatever, do you recall the distance I asked you, you—the point from where you were to the vehicle, I asked you that question. I remembered the answer.

The prosecutor objected to this inquiry on the ground that it constituted an improper form of impeachment. After Defendant conceded that he did not have a transcript of Wells' testimony from the first trial with which to impeach her, the trial court sustained the prosecutor's objection. Later, Defendant attempted to impeach Agent Cramer by asking him if he remembered his prior trial testimony and then stating, "Will there be any time deviation—" The question was interrupted by the State's objection that this was an improper method of impeachment. The objection was sustained again. Defendant argues that these rulings were erroneous.

■■■ In considering a claim of error arising out of the exclusion of evidence, we are mindful that the trial court enjoys broad discretion in making such decisions; absent an abuse of that discretion, a decision excluding evidence will not be disturbed by this Court. *See State v. Robinson,* 90 S.W.3d 547, 550 (Mo.App.2002). We find no abuse of discretion in the trial court's rulings. Before a witness may be impeached by proof of prior contradictory statements, a proper foundation must be laid. *State v. Stallings,* 326 Mo. 1037, 33 S.W.2d 914, 917 (1930). As this Court stated in *Nichols v. Preferred Risk Group,* 44 S.W.3d 886 (Mo.App.2001):

The witness must be given a chance to refresh his recollection of the prior statement and to admit, deny, or explain it. To lay the requisite foundation, it is necessary to ask the witness whether he made the statement. It is essential to quote the prior statement and to point out the precise circumstances under which it was made.

*Id.* at 892–893. The proper procedure that must be followed to impeach a witness with a prior inconsistent statement from a deposition or trial transcript is well-established. The party attempting the impeachment should: (1) show the document to the witness if he asks to see it; (2) read the impeaching question(s) and answer(s); and (3) ask the witness if he did not so testify previously. *See Peppers v. St. Louis–San Francisco Ry. Co.,* 316 Mo. 1104, 295 S.W. 757, 761 (1927). Here, Defendant did not follow this procedure, nor could he have done so without the benefit of a transcript from the first trial. Instead, he attempted to paraphrase or summarize the prior testimony from memory in order to impeach the witnesses. That is not a proper method of impeachment. *See Nichols,* 44 S.W.3d at 892–93; *Lee v. Hartwig,* 848 S.W.2d 496, 498–500 (Mo.App.1992); *Wilkins v. Cash Register Service Co.,* 518 S.W.2d 736, 748–49 (Mo. App.1975). As our Supreme Court held in *State v. Posey,* 347 Mo. 1088, 152 S.W.2d 34 (1941), "where a question is asked a witness to lay a basis for his impeachment by contradictory evidence from other sources, and the question is excluded, the appellant cannot complain except upon a showing that he had asked a proper question, and that he had available the proper evidence to sustain his claim." *Id.* at 42. Defendant's first point is denied.

■■■ In Defendant's second point relied on, he challenges the trial court's denial of his motion to strike venireperson

David Boeckman for cause. Defendant alleges that his motion to strike Boeckman should have been sustained because he was biased as a result of his prior attorney-client relationship with a Camden County prosecutor.[5] During *voir dire*, the trial judge introduced assistant prosecutor Devin Ledom, who was trying the case for the State, to the venire. No one was acquainted with him or had any business or social relationships with him. During Ledom's *voir dire*, he asked whether any members of the venire had any relationships or dealings with Camden County's elected prosecutor, Jim Icenogle. That produced several responses, including one from Boeckman:

> MR. LEDOM: Okay. Let me continue down the first row. No. 5, Mr.—Is it Boeckman?
>
> MR. BOECKMAN: That's correct.
>
> MR. LEDOM: Okay. How do you know Mr. Icenogle?
>
> MR. BOECKMAN: Prepared some legal situations for me probably about 15 years ago.
>
> MR. LEDOM: Okay. Were you satisfied with Mr.—your relationship with Mr. Icenogle in that respect?
>
> MR. BOECKMAN: Yes.
>
> MR. LEDOM: Any thing about your relationship with Mr. Icenogle that would cause you not to be able to sit as a juror here today?
>
> MR. BOECKMAN: Not at this time.

During Defendant's *voir dire*, he made no further inquiry about this topic and asked no questions of Boeckman. After the con-clusion of *voir dire*, Defendant moved to strike Boeckman because Icenogle had performed legal work for him. The prosecutor objected because Boeckman had said nothing to indicate he was not fair and impartial. The trial court denied the motion, and Boeckman was seated as one of the jurors. We find no error in the trial court's ruling.

 In the absence of a statute specifically so providing, a venireperson is not absolutely disqualified because he has been a client of an attorney for one of the parties. *See State v. Grant*, 394 S.W.2d 285, 289 (Mo.1965); *Sheffler v. Arana*, 950 S.W.2d 259, 266 (Mo.App.1997). Rather, a venireperson may be stricken for cause only when his or her views would prevent or substantially impair the performance of his or her duties as a juror in accordance with the instructions and oath. *Hightower v. State*, 43 S.W.3d 472, 476 (Mo.App.2001). It is up to the trial court, in the sound exercise of its discretion, to decide whether a venireperson is unable to be a fair and impartial juror because he or she was previously represented by the prosecutor. *See Grant*, 394 S.W.2d at 289. We find no abuse of that discretion here because we see nothing in Boeckman's responses during *voir dire* indicating that he could not be a fair and impartial juror. *Id.; see also State v. Johnson*, 770 S.W.2d 263, 267–68 (Mo.App.1989) (the trial court did not abuse its discretion in refusing to strike for cause five venirepersons who had been represented at some time in the past by the prosecutor since there was no evidence showing that they could not be fair and

---

**5.** Defendant's point relied on asserts that the trial court erred in denying Defendant's motions to strike "certain juror panel members" for cause. Boeckman is the only venireperson identified in Defendant's brief whom he actually moved to strike for cause. Therefore, we confine our review to this single allegation of error, even though Defendant complains in his argument that the trial court should have struck several other venirepersons for various reasons. We do not consider these additional allegations of error because issues raised only in the argument portion of a brief are not preserved for review. *See Estate of Dugger v. Dugger*, 110 S.W.3d 423, 432 n. 3 (Mo.App. 2003).

impartial); *State v. Webster*, 539 S.W.2d 15, 16–17 (Mo.App.1976) (trial court did not abuse its discretion in failing to strike for cause a venireperson who had an extensive professional relationship with the prosecutor absent evidence that venireperson could not be fair and impartial). Defendant's second point is denied.

■ In Defendant's third point relied on, he contends that the trial court erred in allowing the State to introduce the statements of Joyce Richardson in evidence without disclosing her prior criminal conviction to Defendant in response to his pretrial discovery request. We are unable to review this point because we lack an adequate record upon which to do so. The legal file that was certified by the circuit clerk and filed with this Court does not include the discovery request upon which Defendant's argument is based. Defendant tendered a supplemental legal file which included uncertified copies of this document and the State's response thereto, but leave to file same was denied by this Court. The order denying leave to file these uncertified documents, however, stated that it was done "without prejudice to subsequent consideration to the tender of a supplemental legal file which complies with Missouri's Rules of Court regarding legal files." Rule 30.04(g) provides a procedure whereby the trial court is granted the authority to settle disputes about the correctness of the legal file, but Defendant did not avail himself of this remedy.

Rule 30.04(a) requires that the record on appeal contain "all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." It was Defendant's duty to prepare the legal file. Rule 30.04(c); *State v. Creech*, 983 S.W.2d 169, 171 (Mo.App.1998). Since Defendant has failed to present us with a properly certified copy of his discovery request, this claim of error is not preserved for appellate review. *See State v. Hurtt*, 807 S.W.2d 185, 189 (Mo.App.1991); *State v. McClain*, 602 S.W.2d 458, 459 (Mo.App. 1980).

■ Even if Defendant had properly preserved this issue for review, we fail to understand why the State would have been required to disclose Richardson's conviction in the first instance or how such nondisclosure prejudiced Defendant in any way at trial.

Defendant asserts in his brief that his pretrial discovery request required the State to disclose "any record of any prior criminal arrests or convictions of Defendant or persons the State intends to rely on or call as witness at any hearing or the trial." If this was the discovery request Defendant propounded to the State, disclosure of Richardson's criminal conviction was not required because Richardson was not endorsed by the State as a potential witness, and she did not testify at the trial.

■ Assuming disclosure of Richardson's conviction by the State was required, we further conclude that Defendant was not prejudiced by the omission. The only evidence concerning Richardson's statements came during the testimony of Agent Cramer and Defendant. Agent Cramer testified about statements made by Richardson as she described the coyote-shooting incident to him. Defendant did not object to this testimony. When Defendant testified in his own behalf during his case-in-chief, he also recounted statements that Richardson made to him while describing their April 13th encounter to the jury. Defendant appears to be arguing that, if he had known about Richardson's criminal conviction, the admission of Richardson's statements in this fashion would have permitted him to admit evidence of her con-

viction for impeachment purposes. Since Richardson did not testify, this argument has no merit. *See* § 491.050 (a criminal conviction may be proved to affect the credibility of any witness in a civil or criminal case); *In re Marriage of Daneshfar*, 953 S.W.2d 95, 102–03 (Mo.App.1997) (this statute makes misdemeanor and felony convictions admissible to impeach the credibility of a witness who testifies at trial). Defendant's third point is denied.

After examining each of Defendant's claims of trial court error, we find no merit in any of his arguments. Therefore, we affirm the trial court's judgment.

PARRISH, J. and RAHMEYER, C.J.-P.J., concur.