In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-22-00120-CV
_____

DENMAX ENERGY SERVICES, INC. AND
BATTLE RIVER HOLDINGS, INC., Appellants/Cross-Appellees

V.

LIGHTPOINT ENGINEERING, LLC, Appellee/Cross-Appellant

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 19-05-06401-CV

## MEMORANDUM OPINION

Appellants Denmax Energy Services, Inc. ("Denmax") and Battle River Holdings, Inc. ("BRH") (collectively "Appellants" or "Defendants") appeal from a jury verdict and final judgment rendered in favor of Appellee LightPoint Engineering, LLC ("Appellee," "Plaintiff," or "LightPoint"). Before trial, Defendants filed a motion for summary judgment, and the trial court granted partial summary judgment in favor of the Defendants on Plaintiff's claims for breach of

1

contract, declaratory judgment, and suit on a sworn account. Plaintiff's remaining equitable claims for quantum meruit and unjust enrichment were tried to a jury, and the jury rendered judgment in favor of the Plaintiff.

On appeal, Appellants argue that: the express contract rule precludes an award for quantum meruit or unjust enrichment; the evidence is legally insufficient to support an award for quantum meruit or unjust enrichment; the trial court erred by denying Appellants' attorney's fees that were awarded by the jury; the trial court erred by awarding Appellee its attorney's fees because there was no evidence or insufficient evidence of presentment and because Appellee failed to segregate its fees; and the trial court erred by finding Denmax and BRH jointly and severally liable for damages and attorney's fees. On cross-appeal, Appellee argues that the trial court erred by requiring Appellee to elect remedies and by granting the Appellants' pretrial summary judgment on Appellee's claim for breach of contract, and Appellee argues that Defendants did not properly prove their attorney's fees. As explained below, we conclude that the trial court erred by granting Defendants' pretrial motion for summary judgment on LightPoint's breach of contract claim, and we reverse and remand for a new trial.

Denmax is a construction company owned by Trevor King ("King"), and BRH is a separate entity owned by King that was created in February 2018 to purchase the 32-acre tract of land located in Willis, Texas, which is involved in this lawsuit. DMX Investments, LLC ("DMX") is an entity owned by Denmax for investments.[2] Denmax planned to build a commercial facility, maintenance and fabrication shop, and equipment yard on the 32-acre site, subject to approval from the City of Willis. The 32-acre site chosen by Denmax had previously been used as a racetrack. Denmax anticipated that there would be 7 to 10 additional lots within the 32-acre site that would be available for sale or lease for others to build offices on. Denmax needed an engineering firm to draw up plans for the project.

On December 13, 2017, Denmax entered into a Professional Services Agreement ("PSA") with LightPoint, an engineering firm, for "preliminary engineering services" for the Denmax project. The PSA defines Denmax as the "client," and it describes the services as including "Client Representation, Consulting, and Land Planning[.]" The PSA states that LightPoint will charge a lump

---

[1] Because our disposition of the case turns on Appellee's second cross-point, which deals with the trial court's partial grant of Appellants' summary judgment motion, we will focus primarily on the record as it relates to that motion. *See, e.g.*, *Giant Res., LP v. Lonestar Res., Inc.*, No. 02-21-00349-CV, 2022 Tex. App. LEXIS 5070, at *2 (Tex. App.—Fort Worth July 21, 2022, no pet.).

[2] LightPoint nonsuited DMX Investments, LLC ("DMX") at trial, but DMX was still a party when the competing motions for summary judgment were filed.

sum of $3,500 for "Preliminary Engineering" for the development of the 32-acre site. The PSA describes "Preliminary Engineering" to include "Client Representation, Consulting, and Land Planning services." The PSA also provides that LightPoint shall invoice the Client monthly for time and materials, and a fee schedule is attached to the PSA with an hourly billing rate for engineers, land planner, administrative support, and in-house plotting. The PSA provides that the Client's failure to pay in accord with the PSA "shall constitute a material breach of this AGREEMENT and shall be cause for termination" by LightPoint. Otherwise, the PSA allows either party to terminate the agreement with written 30-day notice, or "should either party fail to perform any material obligations."

LightPoint's Petition

LightPoint filed an Original Petition on May 9, 2019, against Denmax, BRH, and DMX Investments, LLC. Thereafter, LightPoint filed amended petitions, and the Fourth Amended Petition was the live pleading when the parties filed their respective motions for summary judgment and at the time of trial. In the Fourth Amended Petition, LightPoint alleged that in December 2017, it had entered into a written contract with Denmax for "a preliminary engineering consultation" (the PSA) regarding a former racetrack site (which is also referenced as a 32-acre site) located in Willis, Texas. According to the petition, the preliminary engineering was to help Denmax determine the prospects for commercial development at the site and

4

to help Denmax decide whether to purchase the site. Thereafter, BRH purchased the site, although BRH was not a party to the PSA.

LightPoint alleged that at some later date, Defendants "Denmax and/or DMX" also hired Plaintiff "to render full engineering, design, and coordination services to the Site[.]" According to LightPoint, at a meeting in February of 2018, Denmax offered LightPoint "one of the proposed lots on the Site in exchange for LightPoint's full engineering and design services[,]" and LightPoint called this agreement the "Final Engineering Agreement[.]" LightPoint alleged that, in exchange for a lot, LightPoint was to provide "full engineering and design services, which was to include, [] signed and sealed construction drawings, drainage reports with calculations, managing the approval of plans and the permitting process, and coordinating with the City of Willis regarding development of and access to utilities on the Site[.]" LightPoint further alleged that it completed its obligations under the Final Engineering Agreement over a 14-month period.

LightPoint's petition alleges that at some point, it became apparent that the City of Willis might not allow a second building on the site. LightPoint had hoped to use a lot at the site for its new headquarters, and if LightPoint could not construct a building on the site, the land-for-services agreement would be "without value" to LightPoint. The petition further alleges that Denmax made it clear that it still needed LightPoint's services and that LightPoint would be paid for its work. LightPoint

5

alleges that "Defendants requested that Plaintiff generate an invoice addressed to BRH for the entirety of [Plaintiff's] services so that payment could be made[,]" after which LightPoint issued an invoice to Denmax for "the entirety of its final engineering work in the amount of $204,560.00[.]" According to the petition, Denmax did not pay despite having requested the invoice and having "consented to, received, and benefited from" work that LightPoint provided.

The petition asserts a claim for declaratory judgment (to determine and clarify the parties' contractual relationships and obligations), for breach of contract, a suit on sworn account, and in the alternative a claim for quantum meruit and unjust enrichment. In LightPoint's breach of contract claim, it alleges that it had a "valid, enforceable agreement for the provision of final engineering and design services in exchange for land[]" and that LightPoint had fully performed its obligations under the agreement or alternatively, that Denmax breached the Preliminary Engineering Agreement. Plaintiff also included a request for attorney's fees under chapters 37 and 38 of the Texas Civil Practice and Remedies Code.

Attached to the petition is the affidavit of Michael Mathena, the president of LightPoint. The affidavit states that the lawsuit is "based upon goods/services provided[]" by LightPoint to Denmax and states that a balance of $204,560 is due on the account. Attached to the affidavit is LightPoint's invoice to Denmax, dated March 20, 2019, for a project described as "L116-Engineering Design[.]" The

6

invoice includes a description of services, hours, billing rates, and shows the total amounts due for services from December 2017 through March 2019. The invoice reflects credits totaling $20,380.

Defendants' Answer

Defendants filed a verified Original Answer asserting a general denial and denying that certain conditions precedent to Plaintiff's claims had occurred, namely:

a. Plaintiff failed to send monthly invoices to Denmax as required under the December 13, 2017 Professional Services Agreement (the "Agreement");
b. Plaintiff failed to notify Denmax that the total amount would exceed the agreed-to $3,500 estimate as required under the Agreement;
c. Plaintiff failed to notify Denmax of all changes needed to the Scope of Services under the Agreement; and
d. Plaintiff failed to present its claim for payment to Defendants regarding the alleged breach of contracts.

Defendants asserted several affirmative defenses, including: Plaintiff's prior material breach of the agreement; Plaintiff's failure to fully or substantially perform the services for which it seeks compensation; Plaintiff's fraud; Plaintiff's claims being barred in whole or in part because a valid express contract exists that covers the services that are the subject of Plaintiff's claims; Plaintiff's unclean hands; the statute of frauds; and lack of consideration.

Plaintiff's Traditional Motion for Partial Summary Judgment ("MPSJ")

LightPoint filed a traditional motion for partial summary judgment against Denmax on its sworn account claim, supported by an affidavit of Michael Mathena

and an invoice. In the motion, LightPoint alleged that it had performed work for Denmax pursuant to a sworn account, Denmax had received $204,560 in engineering design and related services, and Denmax had not paid and refused to pay the amount owed after allowing for all offsets and credits. LightPoint's motion for partial summary judgment also alleges that Denmax failed to file a sworn denial as required by Rules 93(10) and 185 of the Texas Rules of Civil Procedure, and claimed that as a result, Denmax was barred from disputing the receipt of services or the accuracy of the charges. According to LightPoint, the purported verification Denmax included within its Original Answer was not notarized, so it was not sufficient to controvert LightPoint's sworn account claim. LightPoint also alleged that the verification Denmax included in its answer, which LightPoint asserts is defective, does not include a denial of LightPoint's claim on its sworn account. According to LightPoint's motion, no material fact issues exist on the claim it asserted on its sworn account, and it is entitled to judgment on this claim as a matter of law. Lightpoint attached an affidavit signed by an attorney that claims Lightpoint is entitled to a recovery of at least $96,000 in attorney's fees.

Denmax's Response to Plaintiff's MPSJ

Denmax filed its response to LightPoint's MPSJ, arguing in part that the Fourth Amended Petition, Mathena affidavit, and the invoice attached thereto did

8

not constitute proper summary judgment evidence.[3] Denmax alleged that a suit on a sworn account is not an independent cause of action and "'without a contract there can be no action on a sworn account.'"[4] Therefore, Denmax argued a threshold inquiry is whether there is an enforceable agreement between the parties, and Denmax alleged there was no enforceable agreement. According to Denmax's response to the LightPoint motion, in the deposition of Mathena (LightPoint's president), Mathena testified that at the time the parties entered into the contract for additional engineering services, it was "a contract in exchange for land." Denmax argues that the only contract LightPoint pleaded in its Fourth Amended Petition was not a contract on an open account but rather "an alleged Land-for-Services Agreement[.]" Denmax explained that "a contract on an open account is neither synonymous to nor interchangeable with a contract involving the sale of real property[]" and to the extent LightPoint pleads a sworn account claim in the alternative, such alternative pleading is not proper. Denmax suggested that LightPoint attempted to plead this as an alternative claim in order to avoid the statute of frauds, which would require a signed writing for the alleged Land-for-Services

---

[3] Denmax filed objections to the evidence attached to LightPoint's MPSJ and asked the trial court to strike Plaintiff's Summary Judgment Evidence. Our appellate record does not include an order by the trial court ruling on Denmax's objections.

[4] Citing and quoting *Mitsuba Tex., Inc. v. Brownsville Indep. Sch. Dist.*, No. 05-97-01271-CV, 2000 Tex. App. LEXIS 772, at *10 (Tex. App.—Dallas Feb. 2, 2000, no pet.).

agreement. Denmax argues that there is no evidence that a valid enforceable contract on an open account exists between LightPoint and Denmax, or that at a minimum, there is a fact question about whether such a contract exists, precluding summary judgment.

In the Denmax response, Denmax argued that the services listed in the invoice were provided by Spear Point Engineering, LLC ("Spear Point")[5] and not by LightPoint and that the invoice was not created contemporaneously but rather "after-the-fact for purposes of litigation." It further argued that it was not required to file a verified denial because LightPoint's Fourth Amended Petition did not comply with Rule 185 and lacked specific detail. Denmax further argued that LightPoint's claim for attorney's fees is not supported by competent evidence because the attorney's affidavit does not comply with the lodestar requirements.

Defendants' Motion for Summary Judgment

Defendants also filed a Motion for Summary Judgment.[6] The Defendants' motion for summary judgment disputed LightPoint's characterization of the underlying facts in several ways. According to the Defendants' MSJ, after having

---

[5] In his deposition, Michael Mathena (LightPoint's president) testified, "We own a company called SGR Investments. We own a company called Caliber Development, and we're all partners in Spear Point Engineering and another company called TRI BIO[.]" He also testified, "We have [] an agreement with Spear Point that we provide [] mutual beneficial services."

[6] The Denmax Motion does not expressly state whether it is a no-evidence or traditional motion for summary judgment.

10

received "Invoice No. 14" from LightPoint for $543.75 in January of 2018, it did not receive another invoice until March of 2019, when it received "Invoice No. 270" from LightPoint for more than $215,000. Defendants alleged that the invoices received from LightPoint identified the project name as "L116-Preliminary Engineering[,]" which was the same project name included in the PSA. In addition, Defendants argued that LightPoint's May 9, 2019, demand letter makes it clear that LightPoint's claim for payment related to work LightPoint "allegedly performed on the 'Preliminary Engineering Project.'" Defendants agreed that the copy of Invoice No. 270 for about $215,000 which was attached to LightPoint's First Amended Petition includes a project description of "L116-Engineering Design[,]" but they contend that this version of Invoice No. 270 is "fabricated[.]" Quoting from Mathena's deposition, Defendants asserted that Mathena and LightPoint have admitted that neither Denmax nor DMX breached the PSA, which Defendants maintained is the only basis for LightPoint's breach of contract claim.

Defendants explained in their motion that the parties' dispute arises from the PSA entered into in December of 2017 for "preliminary engineering." The Defendants argued that DMX was not a party to the PSA, and therefore LightPoint cannot hold DMX liable for any alleged breach of that contract. Defendants also argued in their motion for summary judgment that LightPoint admitted that Denmax fully performed under the PSA because, in the Fourth Amended Petition, LightPoint

11

pleaded that "[t]he fee for that stage of work ($3,500) was paid and the services rendered, thus ending the term of the agreement." Defendants also alleged that Mathena admitted the same in his deposition. Defendants further argued that LightPoint failed to comply with all conditions precedent for payment because (1) LightPoint did not provide Denmax with monthly invoices, (2) LightPoint did not notify Denmax that the scope of work had changed, and (3) LightPoint did not notify Denmax that the total cost would exceed the agreed-to fee of $3,500. Defendants also alleged in the alternative that the failure to comply with conditions precedent constituted a "prior material breach" by LightPoint that relieves Denmax from any further obligation under the agreement. Defendants denied that they ever entered into a land-for-services agreement with LightPoint and argued "there is simply no evidence that the parties ever entered into a valid contract involving the conveyance of real property." According to Defendants, Mathena's deposition testimony reflected that, at most, the parties had "general discussions involving the possibility of a 'swap' of 'engineering for a tract of land' in the 'corner' of the property." Accordingly, Defendants argue that any purported land-for-services agreement is not sufficiently definite for a court to understand the parties' obligations. But even assuming there was a land-for-services agreement, Defendants argue it would not be enforceable under the statute of frauds for lack of a signed writing. Defendants then argued that specific performance is not available to

12

LightPoint as a remedy because the alleged land-for-services agreement is "too uncertain to justify specific performance[]" and lost profits are not available because there is no evidence that LightPoint suffered any lost profits as a result of the alleged breach of a land-for-services agreement.

As to LightPoint's claim for suit on a sworn account, Defendants argued in their MSJ that such a claim is not an independent cause of action but rather depends on a valid underlying contract claim and that Mathena testified in his deposition that there was no contract on an open account but only a land-for-services agreement. Defendants also alleged that Invoice No. 270—attached to LightPoint's Fourth Amended Original Petition and the basis for LightPoint's claim for suit on sworn account—was never sent to the Defendants but was a "fabricated" version of the invoice for the lawsuit and an inaccurate approximation. Defendants further argued that they were entitled to summary judgment on LightPoint's claim for declaratory judgment because LightPoint bears the burden of proof on each element of the contract, Mathena testified that there was no contract on an open account, and the alleged land-for-services agreement is barred by the statute of frauds. Defendants also challenged the attorney's fees, arguing LightPoint did not plead for attorney's fees under section 37.009 of the Texas Civil Practice and Remedies Code, so it is not entitled to such fees.

Defendants asserted they were also entitled to summary judgment on LightPoint's claim for quantum meruit because quantum meruit is not available where there is an express contract, and the express PSA for preliminary engineering precludes recovery as a matter of law. Defendants also complained there is no evidence that LightPoint performed services for Defendants because the invoice is based only on approximations, because Mathena testified that most of the work was done by Spear Point and not LightPoint, and because there is no evidence that any services performed by LightPoint were valuable. Defendants also alleged that the express PSA precludes recovery under an unjust enrichment claim and that there is no evidence that the Defendants obtained any benefit from LightPoint by fraud, duress, or taking undue advantage.

Several items are attached to Defendant's MSJ, including: the deposition transcript of Michael Mathena (LightPoint's president), a letter from LightPoint's attorney to Denmax, and the deposition transcript of Trevor King (president of Denmax, BRH, and DMX Investments, LLC).

LightPoint's Response to Defendants' MSJ

LightPoint filed a timely response to Defendants' motion for summary judgment. LightPoint argued that Defendants' MSJ rests on a "false premise," that is, that the services for which LightPoint seeks payment are the subject of the PSA. LightPoint alleged it is seeking payment for "distinct services that are outside the

14

scope of that agreement." In its response, LightPoint characterizes the PSA as a "prior agreement" that was for Preliminary Engineering only, dated December 13, 2017, and to be billed at a total fee of $3,500. LightPoint argues that in February of 2018, Defendants "promised a specific lot of land on the property [being developed] in exchange for the services ("Final Engineering Agreement")[,]" as reflected in an affidavit of Michael Mathena. According to LightPoint, in reliance on this promise, LightPoint began final engineering and design services and created a plan that was submitted to the City of Willis for approval in June 2018. A copy of several pages of drawings is attached to LightPoint's response, titled "Construction Plans for Paving, Drainage & Utilities to Serve Denmax Commercial Development June, 2018[,]" and the drawings bear the name "LightPoint Engineering, LLC[.]" LightPoint acknowledges that it subcontracted some of the work to others, including to Spear Point.

According to LightPoint, the Defendants had "issues" with the City of Willis about utilities, and a representative for Denmax informed LightPoint that Denmax would not be able to provide LightPoint with a lot as had been previously agreed. An email dated August 1, 2018, is attached to the LightPoint response to the MSJ. In that email, Denmax informed LightPoint, "Of course, we need your services to redo the plans etc[.] for the site but first Trevor would like you to know that you will

15

be paid for services to date upon receipt of your invoice."[7] According to LightPoint, in reliance upon this email and at Denmax's direction, LightPoint continued working on the project, including developing a second version of the initial drawings, and the second version was approved by the City of Willis. However, LightPoint alleged that when LightPoint invoiced Denmax, Denmax refused to pay. LightPoint incorporated its MPSJ into its response and alleged that Defendants are barred from denying LightPoint's claim for suit on a sworn account because Defendants failed to file a sworn denial.

As to Defendants' argument that the express PSA precludes an equitable claim for quantum meruit, LightPoint argued that the express PSA was "limited in scope and in no way obligates Plaintiff to provide final engineering and design services" in exchange for $3,500. Regarding the invoices from 2019 that listed the project as "L116-Preliminary Agreement[,]" LightPoint asserted this reference was merely an administrative "carryover" that was subsequently updated. LightPoint asserted that its claim for declaratory judgment is valid because the statute permits a party to a contract to seek a declaratory judgment to construe the contract, to determine its validity, and to seek a declaration of the rights and relationships under the contract.[8] Regarding its claim for unjust enrichment, LightPoint noted that it pleaded a claim

---

[7] Trevor King is the president of Denmax Services, Inc., Battle River Holdings, Inc., and DMX Investments, LLC.

[8] Citing Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a).

for unjust enrichment as an alternative to its other claims and alleged there is evidence of "fraud, duress, or the taking of an undue advantage[]" because of Denmax's size relative to LightPoint's as a startup company and Denmax's continuing to assure LightPoint it would pay LightPoint (as outlined in the email of August 1, 2018) which was an inducement to get LightPoint to continue working for Denmax.

As to its claim for breach of contract, LightPoint argues that the breach of contract claim is based on the "Final Engineering Agreement" and not the PSA, although LightPoint pleaded in the alternative that the Defendants had breached the PSA. LightPoint asserted that Defendants waived any defense of mistake by a failure to plead it. According to LightPoint, the PSA shows DMX as a signatory, which is sufficient to preclude the trial court from granting the Defendants' Motion for Summary Judgment. LightPoint also argued in its response that its breach of contract claim is not based on the PSA but rather a later agreement for "final engineering," but it alleged that should the trial court determine that the PSA covers all engineering and design services, then the Defendants were still required to pay for those services "on a time and materials basis per the rates outlined in that agreement." As to Defendants' assertion that LightPoint had failed to comply with conditions precedent in the PSA, LightPoint argued that (1) the PSA was no longer operative, or in the alternative, (2) Defendants waived any such conditions precedent by their conduct.

LightPoint explained in its response that its breach of contract claim is based on a "Final Engineering Agreement" for "final engineering and design services[,]" which was initially to be a land-for-services agreement. To the extent the statute of frauds applied to that agreement, LightPoint argued that a "later writing acknowledging" the agreement exists—namely, the August 1, 2018 email from Marion Gerhardt (outside general counsel for Denmax) to Mathena requesting an invoice—which LightPoint contends constitutes a legally sufficient writing.[9] In addition, LightPoint asserted that an oral agreement that has been fully performed may be enforceable despite the statute of frauds and it alleges that LightPoint fully performed the engineering services for Defendants.[10]

Several attachments are included with LightPoint's response, including: an affidavit of Michael Mathena; a copy of the PSA; "Construction Plans for Paving, Drainage & Utilities to Serve Denmax Commercial Development" by LightPoint, dated June of 2018; an August 1, 2018 email from Marion Gerhardt to Michael Mathena stating in part "we need your services to redo the plans" and "you will be

---

[9] Citing Tex. Bus. & Com. Code Ann. § 322.007 (recognizing electronic records and signatures); *Joiner v. Elrod*, 716 S.W.2d 606, 609 (Tex. App.—Corpus Christi 1986, no writ) (where the statute of frauds requires a signed writing, the writing may be made after the agreement and need not contain all the agreed-upon terms).

[10] Citing *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 158 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Union Props. Co. v. Klein*, 333 S.W.2d 864, 867-68 (Tex. App.—Eastland 1960, writ ref'd n.r.e.).

paid for services to date upon receipt of your invoice[]"; "Construction Plans for Paving, Drainage & Utilities to Serve Battle River Site" by LightPoint, dated February of 2019; an affidavit and expert report of Lawrence Goldberg, a civil engineer; excerpts of Trevor King's deposition; excerpts of Marion Gerhardt's deposition; and the Fourth Amended Petition.

Both parties raised objections to the other party's summary judgment evidence, but the appellate record does not include any order ruling on the objections. The trial court granted in part and denied in part Defendants' Motion for Summary Judgment. The court denied Defendants' motion as to Plaintiff's claims for quantum meruit, unjust enrichment, and attorney's fees, and granted in part the Defendant's Motion for Summary Judgment as to LightPoint's causes of action for declaratory judgment, breach of contract as to both the "land/ser[vi]ces claim and the services/materials claim," and on the sworn account. The trial court denied Plaintiff's Motion for Partial Summary Judgment on its claim on sworn account "in its entirety."

The Jury's Verdict

Plaintiff's claims for unjust enrichment, quantum meruit, and attorney's fees were tried to a jury.[11] The jury's verdict was as follows:

---

[11] Because we resolve this appeal on the trial court's error in granting the Defendants' summary judgment on the breach of contract claim and we remand for

19

- Question 1 on quantum meruit: "Did Plaintiff perform compensable work for the Defendants for which Plaintiff was not compensated?" The jury answered "yes" as to Denmax and "no" as to BRH.
- Question 2: "What is the reasonable value of such compensable work at the time and place it was performed?" The jury answered "$130,000.00."
- Question 3 on Plaintiff's attorney's fees: "What is a reasonable fee for the necessary services of Lightpoint Engineering, LLC's attorneys as to the matter found by you in Question 1, as stated in dollars and cents?" The jury answered "$250,000.00" for representation in the trial court, "$45,925.00" for representation in the court of appeals, and "$41,250.00" for representation in the Supreme Court of Texas.
- Question 4 on unjust enrichment: "Did any of the parties named below wrongfully secure a benefit or passively receive one from Lightpoint Engineering, LLC which it would be unconscionable to retain?" The jury answered "no" as to Denmax and "yes" as to BRH.
- Question 5: "What is the reasonable value of such benefit as found by you in Question 4?" The jury answered "$65,000.00."
- Question 6 on Defendants' attorney's fees: "What is a reasonable fee for the necessary services of Denmax Energy Services, Inc.'s and Battle River Holdings, Inc.'s attorneys in this case, as stated in dollars and cents?" The jury answered "$250,000.00" for representation in the trial court, "$45,925.00" for representation in the court of appeals, and "$41,250.00" for representation in the Supreme Court of Texas.

Final Judgment Entered by Trial Court

In its Final Judgment,[12] the trial court granted Plaintiff's Motion for Entry of Judgment on the Verdict with certain "modifications" and ordered the following:

---

a new trial, we need not discuss the evidence presented at trial. *See* Tex. R. App. P. 47.1.

[12] The parties also filed certain posttrial motions, which we do not discuss because they do not relate to our resolution of this appeal. *See* Tex. R. App. P. 47.1. The Plaintiff filed an Unopposed Motion for Judgment Nunc Pro Tunc after the trial

20

- LightPoint shall recover $130,000.00 from Denmax and BRH jointly and severally;
- LightPoint shall recover from Denmax and BRH pre-judgment interest, post-judgment interest, and court costs jointly and severally;
- LightPoint shall recover $250,000.00 for attorney's fees from Denmax and BRH jointly and severally;
- Denmax Energy Services, Inc., BRH, and DMX Investments, LLC shall take nothing on their claim for attorney's fees as "such an award is neither equitable nor just";
- BRH's liability on the Final Judgment shall not exceed $65,000.00 plus pre-judgment interest, post-judgment interest, and attorney's fees;
- Denmax's liability on the Final Judgment shall not exceed $130,000.00 plus pre-judgment interest, post-judgment interest, and attorney's fees; and
- providing for attorney's fees on appeal.

The Final Judgment also stated that it "is final as to all claims and parties and is appealable."

Defendants filed a Motion to Modify Final Judgment, challenging the finding of "joint and several liability" against Denmax and BRH and the award of attorney's fees against BRH, and restating the prior objections and challenges. Defendants timely filed their notice of appeal. Thereafter, LightPoint timely filed a Cross-Notice of Appeal.

---

court entered the Final Judgment, citing errors in spelling "Denmax" in the Final Judgment, which the trial court granted.

Issues Raised on Appeal and Cross-Appeal

Appellants Denmax and BRH raise four issues on appeal. In their first issue, Appellants argue that this Court should reverse and render a take-nothing judgment (or modify the judgment) on LightPoint's equitable claims because the express contract rule precludes these claims as a matter of law and because the evidence is legally insufficient to support an award on these claims. In their second issue, Appellants argue that this Court should reverse and reinstate the award of attorney's fees to Denmax and BRH because it is unjust and inequitable for the trial court to eliminate the jury's award. In their third issue, Appellants argue that this Court should reverse and render a take-nothing judgment on LightPoint's attorney's fees claims (or remand for reconsideration) because the judgment on quantum meruit should be reversed, because unjust enrichment cannot support an award of attorney's fees, because of insufficient evidence of presentment, and because LightPoint failed to segregate its fees. In their fourth issue, Appellants argue that this Court should reverse that portion of the Final Judgment finding Denmax and BRH jointly and severally liable for damages and attorney's fees.

Appellee raises three issues on cross-appeal. In its first cross-issue, Appellee argues that the trial court erred by requiring LightPoint to elect remedies by finding Denmax liable for quantum meruit in the amount of $130,000 and finding BRH liable for unjust enrichment in the amount of $65,000. In its second cross-issue,

Appellee argues that the trial court erred in granting summary judgment on LightPoint's breach of contract claim. And in its third cross-issue, Appellee argues that Denmax did not properly prove its attorney's fees. Appellee's brief describes its second and third cross-issues as "conditional," however, Appellee did not state its cross-issues are conditional in the Cross-Notice of Appeal that it filed.

We have jurisdiction to review the trial court's pretrial ruling on the summary judgment because "[w]hen a trial court renders a final judgment, the court's interlocutory orders merge into the judgment and may be challenged by appealing that judgment." *Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020); *see also City of Beaumont v. Guillory*, 751 S.W.2d 491, 492 (Tex. 1988) (per curiam) ("[T]he party against whom an interlocutory summary judgment has been rendered has his right of appeal when and not before such partial summary judgment is merged in a final judgment disposing of all parties and issues."); *Alpert v. Riley*, 274 S.W.3d 277, 286 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("When a trial court grants a partial summary judgment, the issue is ripe for appeal on final judgment if no contested issue of fact on this matter is presented to the jury."). Also, an appellee's attempt to condition consideration of a cross-point on the event that the appellate court reverses the trial court's judgment is ineffective to limit or condition the cross-appeal, and once a cross-point is presented to an appellate court, it is before the court for all purposes. *See Unitarian*

*Universalist Serv. v. Lebrecht*, 670 S.W.2d 402, 403 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.).[13]

Standard of Review and Applicable Law

We review grants of summary judgment de novo. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). In our review we take as true all evidence favorable to the non-movant, indulging every reasonable inference in favor of the non-movant, and resolving any doubts in the non-movant's favor. *See Helena Chem. Co.*, 664 S.W.3d at 73; *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We construe the Defendants' motion for summary judgment to be a combined traditional and no-evidence summary judgment motion. *See* Tex. R. Civ. P. 166a(c), (i).

To defeat a no-evidence motion, the non-movant must produce evidence raising a genuine issue of material fact as to the challenged elements. *See* Tex. R. Civ. P. 166a(i) (stating that the trial court must grant a no-evidence motion for summary judgment "unless the respondent produces summary judgment evidence raising a genuine issue of material fact[]"); *Helena Chem. Co.*, 664 S.W.3d at 72. A genuine issue of material fact exists if the evidence "'rises to a level that would

---

[13] *See also Hutchison v. Union Pac. Res. Co.*, No. 03-01-00196-CV, 2001 Tex. App. LEXIS 7292, at *10 (Tex. App.—Austin Nov. 1, 2001, pet. denied) (affirming the trial court's summary judgment on appellee's cross-point without deciding other points or cross-points where the holding on the cross-point is dispositive of the appeal, citing Tex. R. App. P. 47.1).

enable reasonable and fair-minded people to differ in their conclusions.'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). The evidence does not create an issue of material fact if it is "'"so weak as to do no more than create a mere surmise or suspicion"'" that the fact exists. *Id.* (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)). "Both direct and circumstantial evidence may be used to establish any material fact." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). The affidavit of an interested party can be sufficient to create a fact issue requiring denial of summary judgment. *See Kirkwood v. Jefferson Cnty.*, No. 09-16-00337-CV, 2017 Tex. App. LEXIS 9123, at **5-6 (Tex. App.—Beaumont Sept. 28, 2017, no pet.) (mem. op.); *see also* Tex. R. Civ. P. 166a(c) ("A summary judgment may be based on uncontroverted testimonial evidence of an interested witness [] if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted."). A party moving for traditional summary judgment meets its burden by proving that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c).

A plaintiff asserting a breach-of-contract claim must prove (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or

25

tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (citing *Tamuno Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)). "The standard of proof for an agreement is straightforward. A contract is established when proven by a preponderance of the evidence that an offer is accepted, accompanied by consideration." *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 71 (Tex. 2008) (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997)). In determining whether an oral contract exists, we look to the communications between the parties and the actions and circumstances surrounding those communications. *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 87 (Tex. App.—Houston [1st Dist.] 2018, pet. denied).

Analysis

We begin by noting that, in reviewing the trial court's rulings on Defendants' motion for summary judgment, we do not consider Defendants' arguments that rely on allegations made by LightPoint in earlier-filed petitions because those petitions were not the live pleadings at the time the motion was filed. The live pleading at the time the motion for summary judgment was filed was LightPoint's Fourth Amended Petition. An amended pleading generally supersedes and takes the place of prior pleadings. *See FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Hous. Sys.*, 255

26

S.W.3d 619, 633 (Tex. 2008) ("Our rules provide that amended pleadings and their contents take the place of prior pleadings.") (citing Tex. R. Civ. P. 65).

We also note that, both parties filed objections to the summary judgment evidence presented by the other party, however our appellate record includes no ruling by the trial court on any of those objections. Also, the parties do not raise or address any evidentiary objections in their appellate briefs. The same evidentiary standards that apply in trials also apply to the admissibility of summary judgment evidence, but the rules of error preservation also apply. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163-64 (Tex. 2018). So, even if a party objects to an opponent's summary judgment evidence in the trial court, that evidence remains part of the summary judgment evidence unless an order sustaining the objections is reduced to writing, is signed, and is entered of record. *See id.* at 164, 166. Without both an objection and a ruling, the complained-of evidence remains part of the summary judgment record and should be considered by a court of appeals in reviewing the trial court's judgment. *See Fieldturf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, 642 S.W.3d 829, 837 (Tex. 2022) (citing Tex. R. App. P. 33.1(a); *Seim*, 551 S.W.3d at 166).

It is undisputed that (1) the parties entered into the PSA on December 13, 2017, (2) the PSA states it is for "Preliminary Engineering for Racetrack Site - Willis, Texas[,]" (3) a written copy of PSA was signed by Michael Mathena for

27

LightPoint and Trevor King on behalf of DMX and Denmax. The parties dispute what happened after the PSA was signed. According to LightPoint, the parties later entered into a second agreement that LightPoint calls the "Final Engineering Agreement." LightPoint contends that at a meeting in February of 2018, Defendants proposed a land-for-services payment arrangement whereby LightPoint would provide full engineering and design services, and in return, Defendants would give LightPoint a lot at the site being developed. Mathena's affidavit states as follows:

> [I]n February 2018, the President of Denmax, Trevor King, asked me if LightPoint could provide final engineering, design, and coordination services for the same piece of property. We had a meeting on or about February 15, 2018, to discuss the new work. In attendance were Trevor King, who is the President/Director of Denmax and also a current Director of Battle River Holdings, Inc., Marion Gerhardt and General Counsel for Denmax and representative of the other Defendants as well. I was also present, along with Jerry McCrorey, on behalf of LightPoint. At that meeting, Trevor King suggested that, in lieu of paying for LightPoint's services, it could deed one of the lots on the property, after the new work was completely done and the site was developed. We liked the idea since LightPoint was looking for a new location for its own offices. We viewed the layout of the property and discussed the specific lot that was to be provided by Defendants in exchange for the new work. Trevor King pointed to the specific lot in the northeastern corner of the preliminary layout we had done as part of the initial consultation (the "Lot"). We came to an agreement to provide final engineering and design services in exchange for the Lot.

Mathena's affidavit also asserts that, at some point, due to issues between Defendants and the City of Willis, Defendants learned the City would not allow Denmax to develop the property with multiple lots, which frustrated the Land-for-Services agreement. According to Mathena's affidavit, Marion Gerhardt, General

28

Counsel for Defendants, then assured Mathena that LightPoint would be paid for its services to date and that Defendants still needed LightPoint's continued services. In support of this assertion, LightPoint attached a copy of an email dated August 1, 2018, from Gerhardt to Mathena that stated in relevant part:

> As discussed with Mike, we need to modify the plans for the Willis site due to the city problems.
>
> We are sorry that this likely means there will be only one building on the site - but are open to suggestions of a way to get a second building on the property for you guys.
>
> Of course, we need your services to redo the plans etc[.] for the site but first Trevor would like you to know that you will be paid for services to date upon receipt of your invoice.

In contrast, the Defendants contend they did not receive an invoice from LightPoint until March of 2019 for $215,000, although the parties disagree about whether this invoice—and subsequent alleged revisions to this invoice—were for "Preliminary Engineering" or for "Engineering Design." The parties also disagree about whether this invoice and the work covered by the invoice were part of or controlled by the PSA. The Defendants argue on appeal that the PSA controls all work performed and that the additional services were covered by the PSA, that the PSA expressly provides LightPoint may invoice Denmax as outlined in the attachments to the PSA, and in accordance with the rate sheet also attached to the PSA. The Plaintiff argued in its Response to the MSJ that the PSA was for preliminary work for a flat fee of $3,500, that they were paid for the preliminary

29

work, and then later the parties agreed that the payment for the additional work would be Denmax allowing LightPoint to have a lot inside the 32-acre site and on that lot LightPoint could build a separate office building. After the City notified Denmax it would not allow Denmax to subdivide and build other structures, on August 1, 2018, Denmax sent LightPoint an email and agreed that Denmax would pay LightPoint for all past work and asked LightPoint to send an invoice for that work, and in the email Denmax asked LightPoint for further work and agreed to pay for that work.

The summary judgment evidence includes copies of "Construction Plans for Paving, Drainage & Utilities to Serve Denmax Commercial Development[,]" dated June 2018 and bearing LightPoint's name and "Construction Plans for Paving, Drainage & Utilities to Serve Battle River Site[,]" dated February 2019 and also bearing LightPoint's name. LightPoint's summary judgment evidence also includes a memo from the Director of Public Works for the City of Willis to Michael Mathena, stating in part, "The City has reviewed the latest Denmax plans submitted dated Feb[.] 6, 2019 and we have no additional comments."

On appeal, as they did in the summary judgment filings, Appellants argue there was no agreement between the parties other than the PSA. LightPoint argues on appeal, and in the summary judgment filings, the parties agreed *after* the PSA that LightPoint would prepare and provide Final Engineering Services in exchange

for a payment that began as a land-for-services arrangement and later changed by agreement between the parties to an invoice and payment-for-services rendered. The summary judgment evidence included the PSA, as well as drawings of work performed by LightPoint for Denmax which were submitted to the City of Willis, and other items. The August 2018 email which was attached to the summary judgment evidence submitted by LightPoint is an email from Gerhardt to Mathena, and it appears to acknowledge the land-for-services provision could not go forward, it requests an invoice for the work performed and states further services will be needed, "we need your services to redo the plans[,]" and it indicates Denmax agreed to pay LightPoint for its services.

Viewing the evidence in the light most favorable to the nonmovant, as we must, we conclude that the summary judgment evidence created genuine issues of material fact on whether an agreement existed between the parties, whether the agreement was the PSA or a subsequent agreement, what the terms of the agreement included, whether any party materially breached the agreement, and the damages that resulted from the breach. *See* Tex. R. Civ. P. 166a(c); *Helena Chem. Co.*, 664 S.W.3d at 73. The scope of the PSA or the application of the fee schedule attached to the PSA, or the existence of a subsequent agreement between the parties, and the parties' intent pertaining to the agreement would be fact issues for the jury. In the event the engineering services provided by LightPoint were not governed by the

31

PSA, or another agreement, then in the alternative, LightPoint may be entitled to seek a recovery for unjust enrichment or quantum meruit. *See Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732-33 (Tex. 2018) (quantum meruit is an equitable remedy based on a promise implied by law to pay for beneficial services rendered and knowingly accepted and where there is no valid contract covering the services rendered); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683-84 (Tex. 2000) (a claim for unjust enrichment is based on quasi-contract and is based on an obligation to do justice where no promise was made nor intended and where no express contract covers the parties' dispute).

While it is true Appellants denied that the parties ever entered into a valid enforceable contract for the conveyance of real property, in their response to LightPoint's MPSJ, they conceded "a fact question exists regarding whether any valid, enforceable contract giving rise to 'a suit on account' exists between LightPoint and Denmax[.]" They also argued that, even if such an agreement existed, LightPoint's claims for breach of the agreement were barred by the statute of frauds, by LightPoint's failure to comply with all conditions precedent, and by LightPoint's prior material breach of the PSA agreement.

The statute of frauds requires a signed writing for the conveyance of land. *See* Tex. Bus. & Com. Code Ann. § 26.01(a), (b)(4). That said, in some cases, partial performance may be sufficient to take a contract out of the application of the statute

of frauds when the party seeking to enforce the agreement has partially performed thereunder. *See Ward v. Sponseller*, No. 09-19-00441-CV, 2021 Tex. App. LEXIS 9473, at *10 (Tex. App.—Beaumont Nov. 24, 2021, no pet.) (mem. op.) (citations omitted). Here LightPoint is not seeking to force Denmax to convey a lot within the 32-acre site, nor is LightPoint saying there was a breach of the agreement because Denmax failed to make the conveyance of a lot. Rather, LightPoint contends Denmax expressly agreed to pay LightPoint for services performed by LightPoint or its subcontractors, and Denmax has refused to pay for LightPoint's services. So, this claim would not be governed by section 26.01(b)(4) of the Business and Commerce Code. *See* Tex. Bus. & Com. Code Ann. § 26.01(b)(4).

Next, we find the question of whether LightPoint materially breached the parties' agreement by a failure to comply with alleged conditions precedent is also a fact issue, and any nonmaterial failure to perform by LightPoint would not relieve Appellants from future performance. *See Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (explaining that materiality is a fact issue, and a non-material breach does not excuse future performance); *Bright Now! Dental, Inc. v. Teligistics, Inc.*, No. 09-09-00221-CV, 2010 Tex. App. LEXIS 3656, at *12 (Tex. App.—Beaumont May 13, 2010, no pet.) (mem. op.) ("The issue of whether a breach is material is generally a question of fact.").

We conclude that the trial court's grant of partial summary judgment against LightPoint on its claim for breach of contract was in error because genuine issues of material fact exist on that claim.[14] *See* Tex. R. Civ. P. 166a(c); *Helena Chem. Co.*, 664 S.W.3d at 73. The evidence presented at trial and the claims submitted to the jury were necessarily shaped or controlled by the court's erroneous summary judgment ruling, which we now reverse. When trial proceedings are premised on an erroneous summary judgment order, the "prudent course of action is to restore the parties to the status quo at the time of the summary judgment rulings and begin anew." *See Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 280-81 (Tex. App.—Houston [14th Dist.] 2018, pet. denied);[15] *see also Bright*

---

[14] We express no opinion on whether LightPoint should prevail on its breach of contract claim, nor whether LightPoint may also submit alternative claims for quantum meruit or unjust enrichment in the event the jury finds there was no contract. And, because we have granted a new trial, we also expressly do not reach the attorney's fee issues, or the legal or factual sufficiency issues challenging the jury's findings, or the joint and several liability for damages.

[15] Citing *Associated Air Ctr. LP v. Tary Network Ltd.*, No. 05-13-00685-CV, 2015 Tex. App. LEXIS 2069, at *23 (Tex. App.—Dallas Mar. 4, 2015, no pet.) (mem. op.) ("As long as there is a probability a case has for any reason not been fully developed, an appellate court has the discretion to remand rather than render a decision."); *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2008), *abrogated on other grounds by Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707, 709-10 (Tex. 2019) (remanding case for new trial, despite legal sufficiency issues, when sanctions ordered by trial court prevented full development of case); *Walden v. Affiliated Comput. Servs., Inc.*, 97 S.W.3d 303, 328 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Turboff v. Gertner, Aron & Ledet Invs.*, 763 S.W.2d 827, 832 (Tex. App.—Houston [14th Dist.] 1988, writ denied) (reversing and remanding for new trial because erroneous pretrial summary judgment "limited to an indeterminate degree the evidence which was allowed

*Now! Dental, Inc.*, 2010 Tex. App. LEXIS 3656, at \*\*14-15 (reversing and remanding for a new trial where trial court's error in granting summary judgment for appellee prevented appellant from trying its breach of contract claim); *Gen. Star Indem. Co. v. Creek Vill. Apartments Phase V, Inc.*, 152 S.W.3d 733, 738 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (reversing final judgment following jury trial based on an erroneous pretrial partial summary judgment ruling). "[W]here a case has not been fully developed, and where it has been tried on the wrong theory, the judgment of the appellate court should be one of remand and not one of rendition." *Jackson v. Hall*, 214 S.W.2d 458, 459 (Tex. 1948); *see also U.S. Fire Ins. Co. v. Carter*, 473 S.W.2d 2, 3 (Tex. 1971) (explaining that, where a case has not been fully developed or "in the interest of justice[,]" an appellate court may remand for a new trial rather than render judgment).

We sustain Appellee's second cross-issue on appeal, we reverse the trial court's Order on Defendants' Motion for Summary Judgment as to Plaintiff LightPoint's claim for breach of contract only,[16] and we remand the cause for a new trial consistent with this opinion. *See Bright Now! Dental, Inc.*, 2010 Tex. App.

---

before the jury[]"; declining to consider appellants' issues attacking sufficiency of evidence because of limitations on evidence due to erroneous ruling).

[16] LightPoint has waived any challenge to the grounds it failed to address on appeal. *See* Tex. R. App. P. 33.1(a); *Nixon Fam. P'ship, LP v. Jet Lending, LLC*, No. 09-20-00201-CV, 2022 Tex. App. LEXIS 5544, at \*29 (Tex. App.—Beaumont Aug. 4, 2022, pet. denied) (mem. op.).

LEXIS 3656, at *15. We need not address Appellants' issues one through four nor Appellee's cross-issues one and three, and we express no opinion on the merits of these challenges. *See* Tex. R. App. P. 47.1.

REVERSED AND REMANDED.

LEANNE JOHNSON
Justice

Submitted on January 25, 2024
Opinion Delivered March 7, 2024

Before Golemon, C.J., Johnson and Wright, JJ.